# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:12-cv-562-RJC

| CURTIS LEE, | ) |
| --- | --- |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) **ORDER** |
| RICHARD NELLY, et al., | ) |
| | ) |
| Defendants. | ) |

**THIS MATTER** is before the Court on consideration of Plaintiff's motion to appoint counsel and Plaintiff's request for the issuance of a subpoena.

## I. BACKGROUND

According to his complaint, Plaintiff was incarcerated in the Lanesboro Correctional Institution in July 2010, when he suffered an injury to his hand while working to mop up water. Plaintiff alleges that he slipped on a wet floor and broke his hand during the fall. (Doc. No. 1 at 6). After the fall, Plaintiff explains that he did not pursue a "slip and fall" lawsuit, rather, he contends that he has been the victim of medical malpractice because of the way one or more defendants have treated him following his injury.

Plaintiff showed his injured hand to Correctional Officer Kiker. Plaintiff described his hand as swelling and bleeding due to a bone piercing the skin of his hand. (Id.). Officer Kiker recommended Plaintiff sign up for sick call to see a nurse for an examination of his hand. Plaintiff contends this was improper procedure and that he should have been transmitted to a hospital to have his "hand reset" and put in a cast. Plaintiff asserts that he walked around the

1

prison for five days with his broken hand. At last, according to Plaintiff, his hand was X-rayed and it was revealed that Plaintiff had a broken hand. Plaintiff contends that following this X-ray he was transferred to another State prison rather than to a hospital which he argues "is a violation of State policy." (Id. at 7-8).

Upon his arrival at the new prison, Brown Creek Correctional, Plaintiff was examined by Dr. Sami Hassan who ordered a new X-ray. Plaintiff states that he was transferred from Lanesboro to Brown Creek before an investigation could take place and before Plaintiff could file a grievance. Dr. Hassan, despite Plaintiff's protests, ordered the additional X-rays from Carolina Bone and Joint Center in Monroe, North Carolina. Plaintiff maintains that another X-ray "was not needed after the first x-ray showed [his] hand was broken." (Id. at 7).

Plaintiff contends that he walked around for several weeks with a broken hand and suffered intense pain and that the prescribed pain killers were insufficient to address the pain in his hand. (Id. at 8). Carolina Bone and Joint performed the second round of X-rays which confirmed his broken hand, and instead of proceeding to a "much needed operation" a third round of X-rays were ordered, this time, as Plaintiff contends, "a cat scan to see if [he] had any ligament damage." Plaintiff is of the opinion that Carolina Bone and Joint were trying to bilk the State out of money in conducting this second set of X-rays because the first X-rays demonstrated his broken hand. Further, Plaintiff argues that Carolina Bone and Joint "participated in this long drawn out delay of a much needed operation due to greed constantly finding a way to charge the state for x-rays not needed." (Id. at 9).

Plaintiff argues that the unnecessary second and third set of X-rays delayed his much-needed surgery and left him walking around the prison with a broken hand and in great pain. The

CAT scan, while unnecessary in Plaintiff's estimation, revealed that his hand had begun healing in a disfigured and deformed fashion because of the delay in proceeding to surgery. Plaintiff filed a grievance at Brown Creek Correctional contending that the delay in scheduling surgery was motivated by the one or more defendants desire to deny Plaintiff surgery while incarcerated. Instead, Plaintiff contends that the motivation was to ensure that he would have to pursue surgery following his release from custody. (Id. at 9).

Plaintiff maintains that he discussed the date of surgery on his hand with Dr. Hassan and Plaintiff was assured that he would have the surgery before his release date of September 21, 2011. Dr. Hassan also apparently told Plaintiff that he would not be released with a broken hand.

Plaintiff continues by arguing that "State policy" prohibits the release of an inmate from custody if there are severe injuries. In short, Plaintiff contends that he should not have been released from custody until his injuries were resolved to his satisfaction. (Id. at 10). However, Plaintiff claims that he was released on September 21, 2011, without the necessary medical treatment and with a "badly broken disfigured hand." (Id.). According to the complaint, Plaintiff's grievance was never properly addressed by prison officials.

Following his release, Plaintiff sought assistance from the Department of Social Services and, after several weeks, he qualified for health insurance, although, "[b]y this time [his] hand fully healed back useless and disfigured or deformed." (Id. at 11). Plaintiff sought examination at Carolina Medical in Charlotte. He was informed that it was too late to operate on his hand and he would now have to be seen by a hand specialist; the doctor referred Plaintiff to Ortho Carolina. Plaintiff was given an "extensive operation and lots of therapy at Ortho Carolina." (Id.)

Plaintiff contends that the refusal and/or delay by one or more defendants in performing

and/or authorizing surgery has left his hand disfigured and left Plaintiff unable to perform jobs that he used to perform prior to the injury. Plaintiff asserts that if he had been promptly provided surgery following the injury then he would not suffer from his present handicap. In his claim for relief, Plaintiff seeks damages to compensate him for his disfigured hand in the amount of five-hundred thousand dollars. (Id. at 12).

## II. MOTION FOR COUNSEL

In his motion Plaintiff contends that he should be appointed counsel because he suffers from schizophrenia and that he was found incompetent to proceed to trial in 2012. (Doc. No. 2 at 1). Further, Plaintiff contends that this case may present complex questions of law and fact, and involve investigation into his allegations. Plaintiff states that he is unable to afford counsel and that his lack of legal experience and access to resources suggest that he should be entitled to counsel. (Doc. No. 38).

The law is clear that a civil litigant does not have a constitutional right to counsel. See Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984), abrogated in part on other grounds by Mallard v. U.S. Dist. Ct. of Iowa, 490 U.S. 296, 298 (1989) (noting that 28 U.S.C. § 1915 does not authorize the compulsory appointment of counsel); see also Bowman v. White, 388 F.2d 756, 761 (4th Cir. 1968) (noting that obtaining the assistance of counsel in a civil case "is a privilege not a right.").

Instead, pursuant to 28 U.S.C. § 1915(e)(1), the Court has discretion to request the assistance of an attorney for an indigent person in a civil case. In order to warrant the Court's exercise of this discretion, the litigant must demonstrate the existence of exceptional circumstances. Whisenant, 739 F.2d at 163. The existence of exceptional circumstances depends

4

upon "'the type and complexity of the case, and the abilities of the individuals bringing it.'" Id. (quoting Branch v. Cole, 686 F.2d 264, 266 (5th Cir. 1982)). A plaintiff can show exceptional circumstances by demonstrating that he "has a colorable claim but lacks the capacity to present it." Gordon v. Leeke, 574 F.2d 1147, 1153 (4th Cir. 1978).

The Court has examined Plaintiff's complaint, and finds that Plaintiff has adequately presented his allegations to the Court. Plaintiff's motion for appointment of counsel will therefore be denied in the Court's discretion.

### III. MOTION FOR SUBPOENA

Court-ordered discovery has not commenced in this case. According to his complaint, Plaintiff has been released from the North Carolina Department of Public Safety and is therefore free to apply for his medical records by seeking them from Brown Creek Correctional or directly from the medical providers. Moreover, Plaintiff may apply to the Clerk of Court to request a subpoena to run in the name of this action. See Fed. R. Civ. P. 45(a)(3) ("The clerk must issue a subpoena, signed but otherwise blank, to a party who requests it.").

### IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion to Appoint Counsel is **DENIED** without prejudice. (Doc. No. 2).

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Issuance of Subpoena is **DENIED** without prejudice. (Doc. No. 3).

Signed: February 20, 2013

Robert J. Conrad, Jr.
Chief United States District Judge