IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:12-cv-00562-RJC

| | | |
|---|---|---|
| CURTIS LEE, | ) | |
| a/k/a STEVEN ACKERIDGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **ORDER** |
| RICHARD NELLY, Superintendent, | ) | |
| Lanesboro Correctional Institution; | ) | |
| HERBERT JACKSON, Superintendent, | ) | |
| Brown Creek Correctional Institution, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**THIS MATTER** is before the Court on consideration of the Defendants' motion for

summary judgment as to the claims raised by Plaintiff, who is proceeding *pro se* with a complaint

he filed pursuant to 42 U.S.C. § 1983.[1]

I.      BACKGROUND

In June 2010, Plaintiff was a prisoner of the State of North Carolina and housed in the

Lanesboro Correctional Institution (Lanesboro). (3:12-cv-00562, Doc. No. 1: Compl. at 6).

Plaintiff asserts that during that time, Officer Kiker ordered him to mop-up some rain water that

had gathered on the floor from a leak in the ceiling. While Plaintiff was performing this task, he

slipped and fell to the floor and broke his hand. Plaintiff showed Officer Kiker his hand which was

then bleeding because the broken bone had pierced the skin. Plaintiff signed up for a sick-call and

---

[1] After the defendants filed their motion for summary judgment, the Court entered an Order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), which notified Plaintiff of his obligation in responding to the motion for summary judgment. (Id., Doc. No. 44).

was evaluated by a nurse and his hand was later x-rayed and Plaintiff asserts the test confirmed

that his hand was broken. At this point, Plaintiff contends that he should have been taken to a

hospital for treatment but instead he was transferred from Lanesboro to Brown Creek Correctional

Institution (Brown Creek). Plaintiff alleges that he was x-rayed on two more occasions and each

test confirmed that his hand was broken and the final test noted ligament damage. Plaintiff

contends that he was informed by Dr. Hassan, who provided medical services at both Lanesboro

and Brown Creek, that his hand would be treated before his impending release from prison,

however Plaintiff was released on September 21, 2010, and he had yet to receive the surgery that

Plaintiff requested.[2]

After his transfer to Brown Creek, Plaintiff filed a grievance, pursuant to the North

Carolina Department of Public Safety's ("DPS") Administrative Remedy Procedure, which

contained similar allegations to those presented in his complaint.[3] In particular, he complained that

he had been walking around for 8 weeks with a broken hand which caused him severe pain, and

that two x-rays taken during this period confirmed the existence of his broken hand. Plaintiff

complained that the delay in treatment amounted to a denial of adequate medical care by the DPS

and Carolina Bone & Joint Center where Plaintiff had been examined. In his claim for relief,

Plaintiff requested surgery to repair his injured hand. (Id., Doc. No. 40-3: Exh. A at 6) (Grievance

Number 3510-10-0584). In the Step Two response, the course of Plaintiff's medical treatment was

detailed following his injury up until August 18, 2010. The response confirmed Plaintiff's

assertions that he had received x-rays and that he had been evaluated by Carolina Bone & Joint

---

[2] Dr. Hassan and Carolina Bone & Joint Center were formerly named as defendants in this civil action but each
defendant was later dismissed on initial review pursuant to 28 U.S.C. § 1915A(b)(1). (Id., Doc. No. 16: Order).
[3] In North Carolina, State prisoners must complete a three-step administrative remedy procedure (ARP) in order to
exhaust their administrative remedies. See N.C. Gen. Stat. §§ 148-118.1 to 148-118.9 (Article 11A: Corrections
Administrative Remedy Procedure); Moore v. Bennette, 517 F.3d 717, 721 (4th Cir. 2008).

Center and a Computed Tomography ("CT") scan was performed to better define the injury. The response also shows that Dr. Hassan reviewed Plaintiff's case and recommended pain medications, activity restrictions and an orthopedic consultation. Plaintiff was evaluated on July 20, 2010, at Carolina Bone & Joint Center and a CT scan was recommend and later performed. On August 18, Dr. Friedrich of Carolina Bone & Joint examined Plaintiff and recommended a course of hand therapy to which Plaintiff objected and stated that he preferred surgery. Dr. Hassan was then scheduled to review Dr. Friedrich's recommendation. On August 26, 2010, Plaintiff signed the Step Two response and noted his agreement with the course of recommended medical treatment which included hand therapy and follow-up examinations. (Id. at 7). See id. (Doc. No. 45: Plaintiff's Response at 1-2).

Some five days later, Plaintiff filed a second grievance through the ARP. (Id., Doc. No. 40-3 at 26: Exh. C, Grievance No. 3510-10-0610). In this grievance, Plaintiff again complained that the DPS and Carolina Bone & Joint were intentionally prolonging and delaying surgery to his hand and he demanded fair medical treatment prior to his September 21, 2010 release. (Id.). The Step One grievance was accepted on August 31, 2010, and in the Step One response dated September 9, 2010, the examiner explained that Dr. Hassan submitted a Utilization Review ("UR") request to the UR Board and it was approved and that medical staff was scheduling an appointment with Dr. Moose, who is identified as an orthopedic hand specialist. (Id. at 27-28).[4] Plaintiff signed the Step One response on September 9 and immediately appealed to Step Two of the ARP and this response, which is dated September 14, included detailed treatment recommendations from Dr. Moose that Plaintiff receive range of motion therapy to treat his

---

[4] The function of the UR Board is explained in the Division of Prison's Health Services Policy and Procedures Manual. (Id., Exh. B. at 8-25). For example, certain procedures which are deemed as elective (non-emergeny or urgent), must be preapproved by the UR Board while emergency treatment may be carried out without prior authorization. (Id. at 12 (Surgery); 14 (Type of Request)). See also (Doc. No. 40-6: Aff. of Frank Speer ¶ 20).

injured hand. (Id. at 28). The response also noted that Dr. Hassan had reviewed Dr. Moose's recommendation and would order appropriate medical treatment. (Id. at 4: Aff. of Amy Hooks ¶ 23).

Defendants contend Plaintiff was served with the Step Two response on September 14, and they note that the ARP requires an aggrieved prisoner to file a notice of appeal within 24 hours from receipt of the Step Two response or he has waived his right to appeal. Defendants argue that Plaintiff never filed an appeal after being served on September 14, and he was released on September 21, or some 6 days after his right to appeal expired. (Id., Doc. No. 40-3, Aff. of Amy Hooks at 4 ¶ 26 (citing ARP, Chapter G Section .0307). See id., Doc. No. 40-5: Aff. of Herbert L. Jackson ¶ 30) (citing same); (Doc. No. 40-2: Aff. of Amanda Henry to which is attached a complete copy of Chapter G related to the ARP). Based on the foregoing, Defendants contend that the motion for summary judgment should be granted for failure to exhaust. Plaintiff, for his part, flatly denies that he was ever served with the Step Two response and that at the time of his release he did not know the disposition of this grievance. (Id., Doc. No. 45: Plaintiff's Response at 2).

II.      STANDARD OF REVIEW

Summary judgment is appropriate in cases where there is no genuine dispute as to a material fact and it appears that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A court is bound to enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587. (1986). The "mere existence of *some* alleged factual dispute between the parties

will not defeat an otherwise properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (italics in original). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." Id. at 249-50 (internal citations omitted).

III.     DISCUSSION

In this § 1983 action, Plaintiff contends that Defendant Nelly, who was the superintendent of Lanesboro at the time Plaintiff sustained his injury, and Defendant Jackson, who was superintendent at Brown Creek when Plaintiff was receiving treatment and participating in the grievance process, were deliberately indifferent to his serious medical needs.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48, (1988) (internal citations omitted).[5] Claims under 42 U.S.C. § 1983 based on an alleged lack of or inappropriate medical treatment fall within the Eighth Amendment's prohibition against cruel and unusual punishment. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). To state a claim under the Eighth Amendment, the plaintiff must show that a defendant expressed a "deliberate indifference to serious medical needs" of the inmate. Id. "Deliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care." Young v. City of Mount Rainer, 238 F.3d 567, 575-76 (2001) (citing White ex rel. White v. Chambliss, 112 F.3d 731, 737 (4th Cir. 1997) ("A claim of deliberate indifference . . . implies at a minimum that

---

[5] It is beyond question that the defendants are state actors.

defendants were plainly placed on notice of a danger and chose to ignore the danger notwithstanding the notice.").[6]

In conducting an initial review under § 1915A, the Court was mindful that the well-pleaded allegations in Plaintiff's complaint were accepted as true, but after reviewing the materials submitted by the parties at the summary judgment stage, the Court finds that this civil action must be dismissed.

First, the record shows that there is no evidence that Plaintiff ever filed a grievance following his accident while he was an inmate at Lanesboro. This alone requires dismissal against Defendant Nelly for failure to exhaust because Plaintiff failed to follow the mandatory ARP to present his complaint about his treatment prior to filing his complaint. Plaintiff was a prisoner of the State of North Carolina at the time of the alleged injury and he was bound by the mandatory requirements of the Prisoner Litigation Reform Act ("PLRA") which provides that a prisoner must exhaust his administrative remedies <u>prior</u> to the commencement of a civil action under § 1983. The PLRA provides, in pertinent part that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

In <u>Porter v. Nussle</u>, 534 U.S. 516 (2002), the Supreme Court held that the PLRA's exhaustion requirement applies to all inmate suits about prison life and the Court noted that "exhaustion in cases covered by § 1997e(a) is now mandatory." <u>Id.</u> at 524 (citing <u>Booth v.</u>

---

[6] Plaintiff also contends that the defendants were negligent, however this claim must fail because allegations that merely sound in negligence will not lie in a § 1983 action. <u>See Young</u>, <u>supra</u> ("Deliberate indifference is a very high standard—a showing of mere negligence will not meet it.") (quoting <u>Grayson v. Peed</u>, 195 F.3d 692, 695 (4th Cir. 1999)).

Churner, 532 U.S. 731, 739 (2001)). The Porter Court went on to stress that the exhaustion requirement must be met before commencement of the suit. Id.  Whether an inmate has properly exhausted his administrative remedies is a matter to be determined by referencing the law of the state where the prisoner is housed and where the allegations supporting the complaint arose. See Jones v. Bock, 549 U.S. 199, 218 (2007) ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.").

In sum, Plaintiff must have presented his complaints regarding the treatment he received, or did not receive, to officials at Lanesboro and his transfer to Brown Creek did not excuse the obligation to exhaust his administrative remedies. See Jackson v. Studel, No. 3:10CV177-MU-02, 2010 U.S. Dist. LEXIS 50500, at *4 (W.D.N.C. Apr. 26, 2010) (collecting cases finding that transfer does not excuse compliance with the PLRA).

Furthermore, there is no evidence that Defendant Nelly even knew about Plaintiff's injury or the course of his treatment. The only evidence regarding any medical treatment that Plaintiff underwent at Lanesboro is contained in a report prepared by a nurse after Plaintiff attended a sick call on June 30, 2010, which is some three weeks after his accident. In the report, Nurse Santa Lucia notes that Plaintiff's hand appeared injured and Plaintiff explained he delayed reporting for a sick call to address this because he feared he would lose his job. See (Doc. No. 40-6: Aff. of Frank Speer, Nurse Supervisor at Brown Creek at 6 ¶ 13 (citing Santa Lucia report at 8)). In other words, there is nothing else in Plaintiff's medical records to show that he sought additional treatment prior to his transfer which was just a few days after this examination or that he complained to anyone at Lanesboro about treatment or pain, let alone Defendant Nelly.

Second, the claim against Defendant Jackson will be dismissed because there is no indication that Jackson knew or had reason to know about Plaintiff's injuries or about the course of his medical treatment while he was housed at Brown Creek. In his affidavit, Defendant Jackson plainly states that he had "no firsthand knowledge regarding Plaintiff's alleged hand injury or medical treatment while he was in the custody of the NCDPS" and Jackson avers that he "was not involved in the care or treatment of Plaintiff, nor was I aware of any of the circumstances about which he complains." (Id., Doc. No. 40-5: Jackson Aff. ¶¶ 10-11) (emphasis added). Nor does Plaintiff fairly claim in his complaint that he tried to inform Jackson about his injury or his medical treatment prior to his release or anytime thereafter prior to the filing and service of the complaint. Accordingly, because Plaintiff has failed to present any reasonable allegations that actions or omissions of these defendants contributed to his injury or lack of medical treatment, he necessarily relies on the theory of liability based on the doctrine of *respondeat superior* and his claims must therefore fail. See Monell v. Dep't of Soc. Svcs., 436 U.S. 658, 694 n.58 (1978).

IV.     Remaining motions

Plaintiff filed a motion to compel discovery and a motion for discovery. In these motions, Plaintiff moves for the production of the medical records which were generated following his accident. (Doc. Nos. 34, 38). Defendants move to deny the requested relief contending that the documents Plaintiff is seeking – x-rays, CT scans, etc., are not within his prison medical records and therefore not in the possession of the defendants, and the records within defendants' possession were provided to Plaintiff and covered the dates of January 2010 to September 2010, and include some 70 pages of records. (Doc. No. 42 at 1, 5). Moreover, Plaintiff was released from the custody of the DPS on September 21, 2010, and he did not file for discovery until over 4 years

later and he was free to seek the x-rays or CT scans directly from his medical providers. Based on the foregoing, the Court finds that Plaintiff's motions should be denied.

Defendants' motion to strike Plaintiff's Response in Opposition to the Answer, (Doc. No. 33), will be granted as this document is not a proper pleading under Fed. R. Civ. P. 7, because it simply expresses nearly wholesale disagreement with the answer filed by the defendants. Finally, Defendants' motion to strike Plaintiff's amended complaint is allowed to the extent it presents allegations that are beyond the scope of his motion to amend his complaint. In his motion to amend, Plaintiff merely sought to add a claim for punitive damages and that motion was allowed. (Id., Doc. No. 50). Accordingly, because Plaintiff did not move to amend his complaint to the extent that he ultimately did, the motion to strike will be granted.

V.      CONCLUSION

For the reasons stated herein, the Court finds that Plaintiff has failed to demonstrate material facts to support his claims for relief and the motion for summary judgment will be granted.

**IT IS, THEREFORE, ORDERED** that:

1.  Plaintiff's motions for discovery are **DENIED**. (Doc. Nos. 34, 38)

2.  Plaintiff's motion to appoint counsel is **DENIED** as he has failed to make an adequate showing. (Doc. No. 35).

3.  Defendants' motion to strike Plaintiff's response in opposition to answer is **GRANTED**. (Doc. No. 33).

4.  Defendants' motion to strike the amended complaint is **GRANTED** as set forth above. (Doc. No. 52).

5.  Defendants' motion for summary judgment is **GRANTED**, (Doc. No. 40), and the complaint is **DISMISSED with prejudice.**

The Clerk is directed to close this civil case.

**SO ORDERED.**

Signed: September 28, 2015

Robert J. Conrad, Jr.
United States District Judge